UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD SOLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>    Defendants. | Case No. 20-cv-03912-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING LEAVE TO AMEND**<br><br>Re: Dkt. No. 14 |

Before the Court is Defendants' motion to dismiss plaintiff Chad Solis' complaint. *See* Dkt. No. 14, MTD. In this civil rights action, plaintiff Chad Solis sues defendants City of Sunnyvale, Chief of the Sunnyvale Department of Public Safety Phan Ngo, and police officers Joel Lockwood, Kelly Nguyen, Matty Maxwell, and Joseph Meadows (Defendants) for detaining him, applying excessive force, and forcefully taking his apartment keys to search his apartment without consent. *See* Dkt. No. 1, Compl. Solis asserts that Defendants' actions violated the Fourth Amendment of the United States Constitution, as well as California's Tort Claims Act, and California's Bane Act. *See id.* The central issues are (1) whether there was a sufficient nexus between Ngo's own conduct and the constitutional violations of his subordinates, subjecting him to supervisorial liability under 42 U.S.C. § 1983, and (2) whether the City of Sunnyvale is subject to municipal liability under any *Monell* theory under 42 U.S.C. § 1983. Defendants now

move to dismiss Solis' claims against Chief Ngo and the City of Sunnyvale, and seek to dismiss Solis' claims for relief brought under the California Bane Act, and Article I, section 13 of the California Constitution. *See* MTD.

The Court finds that Solis' complaint fails to allege a sufficient nexus between Ngo's own conduct and the alleged constitutional violations of his subordinates. The Court also finds that the complaint fails to sufficiently allege *Monell* liability against the City of Sunnyvale. Accordingly, the Court GRANTS Defendants' motion to dismiss with LEAVE TO AMEND.

## I. Background

### A. Factual Allegations

The following factual allegations are assumed to be true for purposes of this order. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). On September 13, 2019, Chad Solis heard noises outside his apartment around 1:00 a.m., and went outside his unit where he saw his neighbor Billy Pratt. Compl. ¶ 16. After speaking with him, Pratt informed Solis that he recently dealt with discrimination, harassment, and excessive force from the Sunnyvale Police Department. *Id.* ¶ 17. During this conversation, uniformed Sunnyvale Police Department officers, Lockwood, Meadows, Maxwell, and Nguyen, arrived at the apartment complex in response to a call about "loud noises and concern about a 'struggle to open an apartment door.'" *Id.* ¶ 18. Once the officers "aggressively" approached, Pratt and Solis headed back toward their apartment units. *Id.* ¶ 19. One of the police officers, Defendant Lockwood, ordered Solis to step away from his door, and Solis immediately complied. *Id.* ¶ 20. Several police officers separated Pratt and Solis for questioning, and officers Maxwell and Meadows questioned Solis about the events leading up to their arrival. *Id.* ¶¶ 21–22. Solis informed Defendants that he had a conversation with Pratt, and that Pratt informed him of the recent harassment he dealt with from the police. *Id.* ¶ 22.

Then Defendant Lockwood ordered his field officer trainee, Meadows, to take Solis' house keys to search his home. *Id.* ¶ 23. Defendants did not have a warrant to

search Solis' home. *Id.* Solis saw that the other officers already handcuffed Pratt and acted "aggressively" with him, which made Solis fearful that Defendants would harm him. *Id.* ¶ 24. Solis informed Lockwood, Meadows, Maxwell, and Nguyen that they did not have a warrant, and he declined to give them his key or access to his apartment unit. *Id.* ¶ 25. Lockwood immediately became agitated and "aggressively informed Solis" that "we don't need to" have a warrant, and "I'm not asking, give me the key." *Id.* ¶ 26. Solis persisted refusing consent to a search of his apartment, and asked why the officers had probable cause. *Id.* ¶ 27. Lockwood claimed that "he needed to perform a security check of Solis' unit," even though Solis believed there was no need for a safety check of his home. *Id.* ¶ 28. Lockwood already searched Pratt's apartment and noted debris, which explained the origins of the loud noises complained of in the initial police call. *Id.*

Lockwood threatened Solis and informed him that he would be sent to jail if he did not comply and give his key to the officers. *Id.* ¶ 29. Solis responded to Lockwood's threats by stating that any arrest would be wrongful. *Id.* ¶ 30. Lockwood however, denied that the arrest would be wrongful, and demanded Solis' apartment key once more stating that Solis would go to jail if he refused. *Id.* ¶ 31. Once Solis asked for further clarification, Lockwood used force to obtain Solis' key. *Id.* ¶ 32. Lockwood grabbed Solis' arm and shoved him against the hallway wall, struck him in the throat with his hand, and placed Solis' left wrist in a wrist lock. *Id.* ¶ 33. Then Lockwood "yanked Solis away from the wall," and Meadows, Maxwell, and Nguyen threw Solis onto the floor. *Id.* ¶ 34. All four officers then dogpiled on Solis, and each officer contorted a different body part. *Id.* ¶ 35. Nguyen placed her knee and bodyweight on Solis' back while grabbing his right arm, Lockwood bent Solis' left leg at the knee and cranked it toward his thigh, and Maxwell and Meadows "forcefully maneuver[ed]" and handcuffed Solis while they pinned him down on the ground. *Id.* ¶¶ 35–36. At no time did Solis attempt to strike the Defendant officers or any other City officer during this encounter. *Id.* ¶ 43.

Defendants forcefully took Solis' keys from him, pat searched him, and placed him in a patrol vehicle. *Id.* ¶ 37. Defendants transported Solis to jail for booking and held him

3

1  overnight for about six hours. *Id.* ¶ 38. The Santa Clara County District Attorney's office
2  charged Solis with Penal Code § 415 Disturbing the Peace and Penal Code § 148(a)(1)
3  Resisting/Delaying Officers, but did not file any other criminal charges. *Id.* ¶ 41. Upon
4  release from jail, Defendants returned Solis his apartment keys, and upon return to his
5  apartment, Solis found his apartment door slightly ajar. *Id.* ¶¶ 39–40. Solis alleges that
6  Defendants entered his apartment unit after arresting him, even though they did not obtain
7  a warrant or Solis' express permission to do so. *Id.* ¶ 40. Solis suffered humiliation,
8  emotional distress, and severe pain and physical injury, including abrasions to his arms.
9  *Id.* ¶ 42, 58–59.

10  Defendant Chief Phan Ngo is and was employed as the Chief of the Sunnyvale
11  Department of Public Safety. *Id.* ¶ 15. As the highest position in the Sunnyvale Police
12  Department, Solis alleges that Ngo is responsible for hiring, screening, training, retention,
13  supervision, discipline, counseling, and control of all department employees and their
14  agents. *Id.* Ngo is allegedly charged with administering the policies for the department's
15  safety officers, and is responsible for the promulgation of the policies and procedures of
16  the department. *Id.* Ngo was not present during the events at issue in the complaint. *See*
17  *generally* Compl. The City of Sunnyvale employs the defendant officers. *Id.* ¶ 10. Solis
18  alleges, upon information and belief, that the City maintains the policies, practices, and
19  customs of "performing false arrests, unreasonable and warrantless searches and seizures,
20  and using excessive force." *Id.*

21  **B.    Procedural History**

22  On June 14, 2020, Solis filed a complaint asserting: (1) violation of the Fourth
23  Amendment under 42 U.S.C. § 1983; (2) false arrest, false imprisonment, and violation of
24  Cal. Const. art. I, § 13; (3) excessive force and unreasonable search and seizure in
25  violation of the Fourth Amendment under 42 U.S.C. § 1983; (4) municipal liability for
26  unconstitutional custom or policy under 42 U.S.C. § 1983; and (5) violation of California's
27  Bane Act, Cal. Civ. Code § 52.1. *See* Compl. ¶¶ 61–95. Defendants now move to dismiss
28  under Fed. R. Civ. P. 12(b)(6) the first, third, and fifth claims against defendant Ngo, the

1  second claim against all parties, and the fourth claim against the City of Sunnyvale. *See*
2  MTD. The motion is fully briefed and the Court vacated the hearing set for October 7,
3  2020. *See* Dkt. Nos. 14, 20, 23, 27. All parties have consented to the jurisdiction of a
4  magistrate judge. *See* Dkt. Nos. 6, 19.

**II.     Legal Standard**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

To properly plead a claim under *Monell*, it is insufficient to allege simply that a policy, custom, or practice exists that caused the constitutional violations. *AE v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). Pursuant to the more stringent pleading requirements set forth in *Iqbal*, 556 U.S. at 670, and *Twombly*, 550 U.S. at 553–56, a plaintiff suing a municipal entity must allege sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that plaintiff is entitled to relief. *AE*, 666 F.3d at 636–37 (citing *Starr*, 652 F.3d at 1216, which summarized new pleading standards derived from *Iqbal*, *Twombly* and related Supreme Court decisions).

If a court grants a motion to dismiss, leave to amend should be granted unless the

pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. Discussion

Defendants move to dismiss Solis' complaint on the following grounds: (1) the first claim for relief under 42 U.S.C. § 1983 fails to state a claim against Ngo; (2) the second claim under Cal. Const. art. I, § 13 is meritless; (3) the third claim for relief under 42 U.S.C. § 1983 fails to state a claim against Ngo; (4) the fourth claim for *Monell* liability under 42 U.S.C. § 1983 fails to state a claim against the City of Sunnyvale; and (5) the fifth claim under California's Bane Act fails to state a claim against Ngo. *See* MTD.

The central issues before the Court are (1) whether there was a sufficient nexus between Ngo's own conduct and the constitutional violations of his subordinates, subjecting him to supervisorial liability under 42 U.S.C. § 1983, and (2) whether the City is subject to municipal liability under any *Monell* theory under 42 U.S.C. § 1983.

### A. 42 U.S.C. § 1983

To state a constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Here, Solis alleges constitutional violations of his Fourth Amendment rights, and seeks to impose *Monell* liability against the City of Sunnyvale.

Solis' first and third constitutional claims under section 1983 assert that Defendants Lockwood, Meadows, Nguyen, and Maxwell violated his Fourth Amendment rights by using excessive force to conduct an unreasonable search and seizure. *See* Compl. ¶¶ 62, 77. All of Solis' claims against Ngo allege that in his supervisory capacity as the Chief of Public Safety, Ngo acted under color of law and knew, or reasonably should have known, that his subordinates were engaging in unlawful conduct. *See id.* ¶ 65. Defendants contend that this fails to state a claim against Ngo. The Court agrees.

### 1. Excessive Force

A Fourth Amendment excessive force claim is analyzed under an "objective reasonableness standard." *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The objective reasonableness standard "balance[s] the 'nature and quality of the intrusion' against the 'countervailing governmental interests at stake.'" *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Graham*, 490 U.S. at 396).

The Ninth Circuit has found supervisorial liability under section 1983 where the supervisor was "personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). "Supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (internal quotations omitted).

Solis' excessive force claim is based on Defendants' methods of obtaining Solis' key. Lockwood allegedly "grabbed Solis' arm and shoved him against the hallway wall," and "struck Solis in the throat with his hand and then proceeded to place Solis' left wrist in a wrist lock." Compl. ¶ 33. Then, Lockwood, Nguyen, Meadows, and Maxwell "threw him onto the floor" and "dogpiled on Solis with each officer grabbing a piece of his body and contorting him," while "Nguyen placed her knee and bodyweight on Solis' back while also grabbing his right arm," and "Lockwood bent [his] left leg at the knee and cranked it towards his thigh." *Id.* ¶¶ 34–35. Defendants then handcuffed Solis and transported him to jail for booking. *Id.* ¶¶ 36, 38. Thus, the Court finds that Solis alleges sufficient facts to

7

1    show excessive use of force by Lockwood, Maxwell, Meadows, and Nguyen.

2    But here, Solis alleges that Ngo is liable in his supervisory capacity because he
3    acted under color of law, and "knew, or reasonably should have known that his
4    subordinates" used excessive force, and "failed to act to prevent his subordinates from
5    engaging in such conduct." *Id.* ¶ 65–66. Solis' allegations do not indicate that Ngo
6    personally participated, or engaged in his own culpable action or inaction in the training,
7    supervision or control of his subordinates. But Solis argues that there was a sufficient
8    causal connection between Ngo's wrongful conduct, and the constitutional violation, *see*
9    Dkt. No. 20 at 8, Opp'n, and Ngo therefore acquiesced in the excessive force against Solis.
10   Solis merely alleges that Chief Ngo is "responsible for the hiring . . . and control of all
11   Sunnyvale Department Public Safety employees and/or agents." *Id.* ¶ 15. He also alleges
12   that Ngo is "charged by law with the administration of the [Department's] policies for its
13   safety officers," and was "responsible for the promulgation of the policies and procedures
14   and/or allowances of the practices/customs" at issue in the complaint. *Id.*

15   Solis makes much of the fact that Ngo had an "extensive career in law enforcement"
16   and that Ngo's "attempt to change the City's internal affairs investigation process" shows
17   Ngo's "de facto acknowledge[ment] of the need to address the internal affairs process for
18   the City." Opp'n at 9. But Solis does not make these allegations in the complaint, so these
19   arguments are insufficient to overcome dismissal. On a motion to dismiss, the Court is
20   limited to the allegations in the operative complaint. *See Lee*, 250 F.3d at 688. Even if
21   they were alleged in the complaint, attempting to change the City's Internal Affairs
22   Investigation process, alone, does not indicate knowledge of the other defendants'
23   constitutional violations nor a deliberate indifference in preventing them. Solis does not
24   show a causal connection between Ngo's attempts to change the City's internal affairs
25   processes, and Ngo's knowledge of any issues with the way his subordinate officers were
26   being trained or supervised.

27   The Court finds that Solis did not adequately allege the required causal connection
28   for supervisor liability under section 1983: that Ngo set in motion a series of acts by

1    others, or that he knowingly failed to terminate the excessive force by his subordinate

2    officers which he knew, or reasonably should have known, would inflict constitutional

3    injury to Solis.  The Court finds there is no allegation of culpable indifference against Ngo.

4    Thus, the allegations do not show that Ngo personally played a role in the constitutional

5    violations.

### 2. Unreasonable Search and Seizure

7    The Fourth Amendment prohibits unreasonable seizures.  *See* U.S. Const. amend.

8    IV.  A seizure "occurs when a law enforcement officer, through coercion, 'physical

9    force[,] or a show of authority, in some way' . . . communicated to a reasonable person that

10   he was not at liberty to ignore the police presence and go about his business."  *Hopkins v.*

11   *Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (quoting *United States v. Washington*, 387

12   F.3d 1060, 1069 (9th Cir. 2004)).  A seizure is lawful, however, if the seizing officer has

13   reasonable suspicion of criminal activity and the seizure was "sufficiently brief and

14   minimally intrusive."  *Washington*, 387 F.3d at 1069.  Likewise, a warrantless arrest is

15   reasonable if the officer has probable cause.  *See Atwater v. City of Lago Vista*, 532 U.S.

16   318, 354 (2001).

17   The Fourth Amendment prohibits warrantless searches.  *See* U.S. Const. amend. IV.

18   A "search" occurs when the government "physically occupie[s] private property for

19   purposes of obtaining information."  *Patel v. City of Montclair*, 798 F.3d 895, 898 (9th Cir.

20   2015) (alterations in original) (quoting *United States v. Jones*, 565 U.S. 400, 404 (2012)).

21   Here, Solis sufficiently alleged that the Defendant officers seized him.  According

22   to Solis, Lockwood, Maxwell, Meadows, and Nguyen all used force to restrain Solis and

23   obtain his key to his apartment.  *See* Compl. ¶ 32.  Assuming these allegations as true, as

24   the Court must on a motion to dismiss, the officers' conduct amounted to a seizure and

25   warrantless arrest.  Further, Lockwood already searched Mr. Pratt's apartment and noted

26   debris, which explained where the alleged loud noises originated, *see* Compl. ¶ 28, so the

27   facts alleged also indicate that the officers lacked probable cause.

28   Solis' allegations also demonstrate that a warrantless search occurred.  Lockwood

ordered Meadows to take Solis' house keys to perform a warrantless search of his home. *Id.* ¶ 23. Solis' objected for lack of a warrant, and declined to give consent in the presence of Lockwood, Meadows, Maxwell, and Nguyen. *Id.* ¶ 25. Solis alleges that when he returned from custody, "he found the door to his apartment slightly open," and believes that "the Defendants entered his apartment unit after arresting him, without his express permission, and performed a warrantless search of his home." *Id.* ¶ 40. Thus, the Court finds that Solis sufficiently alleged unreasonable search and seizure by Lockwood, Meadows, Maxwell, and Nguyen.

Solis' allegations, however, do not demonstrate that Ngo is liable for violating the Fourth Amendment in his supervisory capacity. As discussed above, Solis again alleges that Ngo failed to prevent his subordinates from engaging in an unlawful search and seizure, *see id.* ¶ 82, and that Ngo knew or should have known that the defendant officers were engaging in these acts which deprived Solis of his constitutional rights, *see id.* ¶ 81. Ngo was not present during the events at issue in the complaint. Similar to his excessive force claim, Solis did not sufficiently allege facts that show a causal connection between Ngo's own conduct or acquiescence, and the constitutional deprivations allegedly committed by his subordinates. Accordingly, the Court GRANTS Defendants' motion to dismiss Solis' first and third claims under the Fourth Amendment against Ngo, with LEAVE TO AMEND.

### B.     False Arrest and False Imprisonment Remedies

To state a claim for false arrest, the plaintiff must allege: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).

Here, Solis' second claim seeks damages for false arrest and imprisonment under article I, section 13 of the California Constitution. *See* Compl. ¶¶ 70–75; Cal. Const. art. I, § 13. The California Constitution does not provide a direct cause of action for damages. *See Wigfall v. City & Cty of San Francisco*, No. 06-cv-4968-VRW, 2007 WL 174434

(N.D. Cal. Jan. 22, 2007).  But it does provide a non-monetary remedy to plaintiffs.  *See* Cal. Const. art. I, §§ 7, 13; *see also Harvey v. City of Oakland*, No. 07-cv-01681-MJJ, 2007 WL 3035529 (N.D. Cal. Oct. 16, 2007).  Although Solis did not seek declaratory or injunctive relief in his complaint, he contends that his false arrest claim has merit otherwise.  *See* Opp'n at 10–11.  Solis does not object to a dismissal of the monetary damages portion of his false arrest claim.  *See id.* at 11.  Accordingly, the Court GRANTS Defendants' motion to dismiss Solis' false arrest claim with LEAVE TO AMEND to reflect the adequate declaratory and injunctive relief sought under article I, §§ 7,13 of the California Constitution.

### C. *Monell* Liability

Solis' fourth claim asserts municipal liability against the City of Sunnyvale for violation of due process pursuant to 42 U.S.C. § 1983.  *See* Compl. ¶¶ 85–94.  Solis argues the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for (1) its custom of employing and retaining police officers, and its policy, custom, and practice of using excessive force; (2) its failure to properly train officers; and (3) ratifying such policies.  *See* Compl. ¶¶ 85–94.

Under section 1983, a municipality is only liable when the alleged acts implement a municipal policy or custom in violation of constitutional rights.  *See Monell*, 436 U.S. at 690.  "Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker."  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013).  A plaintiff may also show that "an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the 'decision and the basis for it.'"  *Fully v. City of Oakland, Cal*, 47 F.3d 1522, 1534 (9th Cir. 1995).

Here, Solis does not allege sufficient facts to support his claim that his injury resulted from either an official policy or long-standing practice or custom, the City's failure to properly train officers, or from an official policy maker's ratification of such

policies.

### 1. Policy or Long-Standing Custom

Generally, a municipality cannot be held liable under section 1983 "solely because it employs a tortfeasor." *Monell*, 426 U.S. at 691. Rather, section 1983 liability may be imposed only when a municipal "policy" or "custom" is the "moving force" behind a violation of federally protected rights. *Id.* at 694.

Here, Solis describes the city's "official recognized custom, policy, and practice" as unconstitutional without citing any policy statement, ordinance, regulation, or decision officially adopted or promulgated by the City of Sunnyvale. Compl. ¶ 87. Absent a formal policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Solis' allegations fail here. Solis contends that the City has and maintains "an unconstitutional policy, custom, and practice of using excessive force," and these "practices . . . were done with deliberate indifference to individuals' safety and rights." Compl. ¶ 88. He also alleges that they are "affirmatively linked to and were a significantly influential force behind [Solis'] injuries." *Id.* ¶ 91. Solis alleges that the City "made a conscious decision to forgo fixing or changing its custom, policy, or practice, as evidenced by [1] retaining several officers accused of excessive force against [] fellow officers and detained suspects, [2] separate lawsuits for excessive force, and [3] citizen complaints for excessive force." Opp'n at 13.

First, municipal liability cannot be imposed on the City of Sunnyvale solely because it retained several officers accused of excessive force. *See Monell*, 426 U.S. at 691. Second, Solis uses the existence of separate excessive force lawsuits against the City to show that there is a long-standing practice or custom, but these allegations are inapplicable and too attenuated to the instant case. In his complaint, Solis cites to *Wowak et al. v. City of Sunnyvale et al.*, No. 03-cv-00394, 2003 WL 23688301, in which the plaintiff, a police officer employed by the City, complained of use of excessive force against employees during training, and against detainees. Compl. ¶ 51. *Wowak* is inapplicable here to show a

practice or custom in the City of Sunnyvale because the complained of conduct there occurred over fifteen years ago. *See Hunter v. Cty of Sacramento*, 652 F.3d 1225, 1227–28 (9th Cir. 2011) (in a case where the practice occurred between 2000–2005, and the complained of incident occurred in 2005, using evidence from a former employee regarding pattern of excessive force is sufficient to show practice or custom).

Although statements of a former employee are sufficient to show a custom or practice, the allegations here are not based on recent or factually similar prior lawsuits to adequately state a claim that the City engaged in a pattern of unconstitutional conduct. Solis also alleged that two more recent lawsuits showed the City's custom of excessive force, Compl. ¶ 53, but neither of those lawsuits resulted in judgments against the City, let alone findings that the City maintained a custom of permitting excessive force. *See Bagley v. City of Sunnyvale*, No. 16-cv-02250-LHK, 2017 WL 344998 (N.D. Cal. Jan. 24, 2017) (plaintiff alleged that Sunnyvale had a policy of tolerating and promoting the continued use of excessive force, but the Court found that plaintiff failed to sufficiently allege that Sunnyvale's policies caused the constitutional violations at issue); *see also Purnell v. City of Sunnyvale Police Dep't*, No. 18-cv-02113-EJD, 2020 WL 3833286 (N.D. Cal. July 8, 2020), *appeal docketed*, No. 20-16447 (9th Cir. Jul. 29, 2020) (plaintiff's allegations that Sunnyvale used excessive force resulted in summary judgment finding against the plaintiff). Without facts alleging that these practices amount to a long-standing practice or custom, the mere existence of lawsuits against the City does not adequately show that the City adopted a custom of condoning excessive force.

This description of prior incidents is too vague to amount to a long-standing practice or custom. *See Clemmons v. City of Long Beach*, 379 F. App'x 639, 641 (9th Cir. 2010) (holding that improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy). Solis mentioned three prior incidents, in which different plaintiffs complained of excessive force. Compl. ¶¶ 51–53. However, these three incidents are not sufficient to establish a

13

1   custom. *See Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988).

2   Finally, Solis' vague allegations similarly fail to show that a long-standing practice
3   exists based on a history of citizen complaints. Solis alleges that there are "twenty-four
4   citizen complaints of excessive force against [the City] from 2007–Present," and that upon
5   information and belief, "in every single one of these reported incidents . . . [the City] has
6   deemed the complaints regarding the officers to be "Unfounded," "Not Sustained,"
7   "Exonerated," and as an "Inquiry Only." Compl. ¶ 50. The Court cannot draw
8   conclusions based on the fact that the City did not pursue twenty-four citizen complaints
9   over the course of thirteen years. Accordingly, the Court disregards Solis' arguments
10  regarding policy or long-standing custom.

### 2.  Inadequacy of Training

12  Inadequacy of training may also "serve as the basis for § 1983 liability," but only
13  when a plaintiff can prove "deliberate indifference"— a "stringent standard of fault,
14  requiring proof that a municipal actor disregarded a known or obvious consequence of his
15  action." *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997)
16  (requiring a pattern of similar constitutional violations under a failure-to-train theory).
17  This type of indifference may be shown when, for example, "policymakers are on actual or
18  constructive notice that a particular omission in their training program causes city
19  employees to violate citizens' constitutional rights" but still choose to retain that program.
20  *Connick*, 563 U.S. 51, 61. "A *pattern* of similar constitutional violations by untrained
21  employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of
22  failure to train." *Id.* (emphasis added) (quoting *Bryan Cty*, 520 U.S. at 409).

23  Under this theory, Solis alleges that the City's "failure to discipline and properly
24  train any of the involved Officers is evidence of an official policy, entrenched culture, and
25  posture of deliberate indifference toward protecting citizen's [sic] rights," and that his
26  injuries are a "proximate result of the [City's] failure to properly supervise and train its
27  Police Officers." Compl. ¶ 50. Similarly here, Solis has not alleged enough facts to show
28  that the City acted with deliberate indifference as to its officers' use of force during arrests

1  and he relies on merely conclusory statements. Solis generally alleges that the City's
2  training of officers is inadequate because they train in "following through with excessive
3  force, false arrest, and the unreasonable search and seizure." Compl. ¶ 54. He also alleges
4  that the failure to train is evident based on the Sunnyvale Public Safety Manual which
5  states "[e]mployees shall obey the lawful orders given by higher ranking officers. An
6  employee shall not refuse or fail to obey an order given by a higher ranking officer."
7  Compl. ¶ 54. Because defendant Lockwood is Meadows' direct supervisor, Solis alleges
8  that when Lockwood directed and ordered Meadows to search Solis' apartment without a
9  valid warrant, he did so as a result of the "approved and department-wide policy" and
10 Meadows "followed the lead and direction of Defendant Lockwood" per their training. *Id.*

Solis concludes that this provision of the public safety manual trains officers to use excessive force, at their superior's request. *See id.* ¶ 55. He bases this allegation on Lockwood's position as Meadows' direct supervisor. *Id.* ¶ 54. Evidence of the failure to train a single employee is ordinarily insufficient to establish that the failure to train was a municipality's deliberate policy. *Connick*, 563 U.S. 51, 66; *see Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training was classified as negligence rather than deliberate indifference). As defendants highlight in their motion to dismiss, Solis' statements present only "mere conclusory statements." Dkt No. 23 at 1, Reply. Thus, Solis' allegations of inadequate training are insufficient to survive a motion to dismiss.

### 3. Ratification

On Solis' final theory of *Monell* liability, ratification occurs only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing a final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "If the authorized policymakers approve a subordinate's decision and the basis for it, their

15

ratification would be chargeable to the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, Solis' ratification argument consists solely of a mere recitation of the ratification elements. He claims that the City retained officers accused of excessive force, *see* Opp'n at 15, and because the City had "either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above," the Defendants "condoned, tolerated, and . . . thereby ratified such policies," Compl. ¶ 89. Solis also alleges that the City's "failure to discipline [Defendants], demonstrates the . . . practice of promoting tolerating and/or ratifying with deliberate indifference, the use of excessive force, the fabrication or omission of facts from official reports to cover up misconduct, false arrest, unreasonable searches and seizures, as well as the obedience to supervisors when ordered to violate a citizen's constitutional rights." *Id.* ¶ 47. The complaint is devoid of facts showing that a final policy maker made a deliberate choice to follow a course of action, or that it adopted a subordinate's decision.

Because Solis' *Monell* claim contains conclusory legal statements rather than specific facts, and contains vague and inapposite allegations of prior incidents, the Court finds that the *Monell* claim insufficiently states a claim for relief. The Court GRANTS the motion to dismiss the section 1983 claim against the City of Sunnyvale with LEAVE TO AMEND.

### D. California Civil Code § 52.1 (Bane Act)

California Civil Code section 52.1 makes actionable "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b). "[T]he elements of [an] excessive force claim under Civil Code § 52.1 are the same as under § 1983." *Chaundry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). Thus, if a plaintiff cannot prove a constitutional violation under § 1983, he cannot bring a cause of action under a Bane Act

violation either. *Pryor v. City and Cty. of San Francisco*, 671 F. App'x 751, 752 (9th Cir. 2017).

In their motion to dismiss, Defendants argue that Solis' fifth claim under the Bane Act fails with regard to Ngo because there is no showing of threats, intimidation, coercion, or violence by Ngo. *See* MTD at 14. Solis does not object to dismissing this claim against Ngo. *See* Opp'n at 19. Accordingly, the Court GRANTS Defendants' motion to dismiss Solis' Bane Act claim against Ngo WITHOUT LEAVE TO AMEND.

## IV. Conclusion

The Court orders the following:

- The motion to dismiss all claims under 42 U.S.C. § 1983 against Ngo is hereby GRANTED with LEAVE TO AMEND;
- The motion to dismiss all claims against all defendants under Cal. Const. art. I, § 13 is GRANTED with LEAVE TO AMEND to reflect the adequate declaratory and injunctive relief sought;
- The motion to dismiss Solis' claim against the City of Sunnyvale for *Monell* liability is hereby GRANTED with LEAVE TO AMEND; and
- The motion to dismiss the Bane Act claim against Ngo is GRANTED WITHOUT LEAVE TO AMEND.

Solis' amended complaint, if any, must be filed by **November 4, 2020**. The amended complaint must cure the deficiencies noted in this order and may not add any claims or parties without leave of the Court. If Solis does not file a timely amended complaint, Defendants LOCKWOOD, MEADOWS, NGUYEN, and MAXWELL must answer the complaint by **November 18, 2020.**

**IT IS SO ORDERED.**

Dated: October 21, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge