UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD SOLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>    Defendants. | Case No. 20-cv-03912-NC<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

Defendants Ngo and the City of Sunnyvale move to dismiss plaintiff Chad Solis' first amended complaint. *See* Dkt. No. 30, Motion to Dismiss ("MTD"). As before, Solis alleges that Defendants detained him, applied excessive force, and forcefully took his apartment keys to search his apartment without consent. *See* Dkt. No. 29, First Amended Complaint ("FAC"). Again, however, Solis fails to allege facts to support his claims against Ngo and the City. The Court finds that Solis' amended complaint still fails to allege a sufficient nexus between Ngo's own conduct and the alleged constitutional violations of his subordinates. The Court also finds that the amended complaint still fails to sufficiently allege *Monell* liability against the City of Sunnyvale. Accordingly, the Court GRANTS the motion to dismiss the first claim against Ngo, and the fourth claim against the City of Sunnyvale, WITHOUT LEAVE TO AMEND. The Court DENIES the motion to dismiss as to the remaining defendants.

## I. Background

### A. Allegations in the First Amended Complaint

The following factual allegations are assumed to be true for purposes of this order. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). On September 13, 2019, Chad Solis heard noises outside his apartment around 1:00 a.m., and went outside his unit where he saw his neighbor Billy Pratt. FAC ¶ 16. After speaking with him, Pratt informed Solis that he recently dealt with discrimination, harassment, and excessive force from the Sunnyvale Police Department. *Id.* ¶ 17. During this conversation, uniformed Sunnyvale Police Department officers, Lockwood, Meadows, Maxwell, and Nguyen, arrived at the apartment complex in response to a call about "loud noises and concern about a 'struggle to open an apartment door.'" *Id.* ¶ 18. Once the officers "aggressively" approached, Pratt and Solis headed back toward their apartment units. *Id.* ¶ 19. One of the police officers, Defendant Lockwood, ordered Solis to step away from his door, and Solis immediately complied. *Id.* ¶ 20. Several police officers separated Pratt and Solis for questioning, and officers Maxwell and Meadows questioned Solis about the events leading up to their arrival. *Id.* ¶¶ 21–22. Solis informed Defendants that he had a conversation with Pratt, and that Pratt informed him of the recent harassment he dealt with from the police. *Id.* ¶ 22.

Then Defendant Lockwood ordered his field officer trainee, Meadows, to take Solis' house keys to search his home. *Id.* ¶ 23. Defendants did not have a warrant to search Solis' home. *Id.* Solis saw that the other officers already handcuffed Pratt and acted "aggressively" with him, which made Solis fearful that Defendants would harm him. *Id.* ¶ 24. Solis informed Lockwood, Meadows, Maxwell, and Nguyen that they did not have a warrant, and he declined to give them his key or access to his apartment unit. *Id.* ¶ 25. Lockwood immediately became agitated and "aggressively informed Solis" that "we don't need to" have a warrant, and "I'm not asking, give me the key." *Id.* ¶ 26. Solis persisted refusing consent to a search of his apartment and asked why the officers had probable cause. *Id.* ¶ 27. Lockwood claimed that "he needed to perform a security check

1  of Solis' unit," even though Solis believed there was no need for a safety check of his
2  home. *Id.* ¶ 28. Lockwood already searched Pratt's apartment and noted debris, which
3  explained the origins of the loud noises complained of in the initial police call. *Id.*

4      Lockwood threatened Solis and informed him that he would be sent to jail if he did
5  not comply and give his key to the officers. *Id.* ¶ 29. Solis responded to Lockwood's
6  threats by stating that any arrest would be wrongful. *Id.* ¶ 30. Lockwood however, denied
7  that the arrest would be wrongful, and demanded Solis' apartment key once more stating
8  that Solis would go to jail if he refused. *Id.* ¶ 31. Once Solis asked for further
9  clarification, Lockwood used force to obtain Solis' key. *Id.* ¶ 32. Lockwood grabbed
10 Solis' arm and shoved him against the hallway wall, struck him in the throat with his hand,
11 and placed Solis' left wrist in a wrist lock. *Id.* ¶ 33. Then Lockwood "yanked Solis away
12 from the wall," and Meadows, Maxwell, and Nguyen threw Solis onto the floor. *Id.* ¶ 34.
13 All four officers then dogpiled on Solis, and each officer contorted a different body part.
14 *Id.* ¶ 35. Nguyen placed her knee and bodyweight on Solis' back while grabbing his right
15 arm, Lockwood bent Solis' left leg at the knee and cranked it toward his thigh, and
16 Maxwell and Meadows "forcefully maneuver[ed]" and handcuffed Solis while they pinned
17 him down on the ground. *Id.* ¶¶ 35–36. At no time did Solis attempt to strike the
18 Defendant officers or any other City officer during this encounter. *Id.* ¶ 43.

19     Defendants forcefully took Solis' keys from him, pat searched him, and placed him
20 in a patrol vehicle. *Id.* ¶ 37. Defendants transported Solis to jail for booking and held him
21 overnight for about six hours. *Id.* ¶ 38. The Santa Clara County District Attorney's office
22 charged Solis with Penal Code § 415 Disturbing the Peace and Penal Code § 148(a)(1)
23 Resisting/Delaying Officers, but did not file any other criminal charges. *Id.* ¶ 41. Upon
24 release from jail, Defendants returned Solis his apartment keys, and upon return to his
25 apartment, Solis found his apartment door slightly ajar. *Id.* ¶¶ 39–40. Solis alleges that
26 Defendants entered his apartment unit after arresting him, even though they did not obtain
27 a warrant or Solis' express permission to do so. *Id.* ¶ 40. Solis suffered humiliation,
28 emotional distress, and severe pain and physical injury, including abrasions to his arms.

*Id.* ¶ 42, 66–67.

Defendant Chief Phan Ngo is and was employed as the Chief of the Sunnyvale Department of Public Safety. *Id.* ¶ 15. As the highest position in the Sunnyvale Police Department, Solis alleges that Ngo is responsible for hiring, screening, training, retention, supervision, discipline, counseling, and control of all department employees and their agents. *Id.* Ngo is allegedly charged with administering the policies for the department's safety officers and is responsible for the promulgation of the policies and procedures of the department. *Id.* Ngo was not present during the events at issue in the complaint. *See generally* FAC. The City of Sunnyvale employs the defendant officers. *Id.* ¶ 10. Solis alleges, upon information and belief, that the City maintains the policies, practices, and customs of "performing false arrests, unreasonable and warrantless searches and seizures, and using excessive force." *Id.*

### B. Procedural History

Solis filed this lawsuit on June 14, 2020. *See* Dkt. No. 1. The Court dismissed Solis' complaint on October 21, 2020, for failure to state a claim. *See* Dkt. No. 28. Solis amended his complaint on November 4, 2020, alleging: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) false arrest, false imprisonment, and violation of Cal. Const. art. I, § 13; (3) excessive force and unreasonable search and seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983; (4) municipal liability for unconstitutional custom or policy under 42 U.S.C. § 1983; and (5) violation of California's Bane Act, Cal. Civ. Code § 52.1. *See* FAC. ¶¶ 69–112. Defendants again move to dismiss under Fed. R. Civ. P. 12(b)(6) the first claim against defendant Ngo,[1] and the fourth claim against the City of Sunnyvale. *See* MTD. The motion is fully briefed, and the Court vacated the hearing set for December 23, 2020. *See* Dkt. Nos. 30, 31, 32, 33. All parties

---

[1] After amending the complaint, Solis removed Ngo from his third claim. *See* FAC ¶¶ 88–94. Defendants' motion to dismiss only addresses the first claim for relief, *see* MTD at 2, but Solis' Opposition says Defendants move to dismiss the third claim for relief as well, *see* Opposition to MTD ("Opp'n") at 6. Because the analysis for both claims is the same, and because Solis removed Ngo from the third claim in the FAC, the Court's analysis of the first claim also applies to the third claim.

4

1  have consented to the jurisdiction of a magistrate judge.  *See* Dkt. Nos. 6, 19.

2  **II.   Legal Standard**

3       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

     To properly plead a claim under *Monell*, it is insufficient to allege simply that a policy, custom, or practice exists that caused the constitutional violations. *AE v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). Pursuant to the more stringent pleading requirements set forth in *Iqbal*, 556 U.S. at 670, and *Twombly*, 550 U.S. at 553–56, a plaintiff suing a municipal entity must allege sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that plaintiff is entitled to relief. *AE*, 666 F.3d at 636–37 (citing *Starr*, 652 F.3d at 1216, which summarized new pleading standards derived from *Iqbal*, *Twombly* and related Supreme Court decisions).

     If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

//

### III. Discussion

Defendants Ngo and the City of Sunnyvale move to dismiss Solis' amended complaint on the following grounds: (1) the first claim for relief under 42 U.S.C. § 1983 fails to state a claim against Ngo; and (2) the fourth claim for *Monell* liability under 42 U.S.C. § 1983 fails to state a claim against the City of Sunnyvale. *See* MTD.[2]

As before, the central issues before the Court are (1) whether there was a sufficient nexus between Ngo's own conduct and the constitutional violations of his subordinates, subjecting him to supervisorial liability under 42 U.S.C. § 1983, and (2) whether the City is subject to municipal liability under any *Monell* theory under 42 U.S.C. § 1983.

#### A.   42 U.S.C. § 1983

To state a constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Here, Solis alleges constitutional violations of his Fourth Amendment rights, and seeks to impose *Monell* liability against the City of Sunnyvale.

Solis' first constitutional claim under section 1983 asserts that Defendants Lockwood, Meadows, Nguyen, and Maxwell violated his Fourth Amendment rights by using excessive force to conduct an unreasonable search and seizure. *See* FAC. ¶ 70. All of Solis' claims against Ngo allege that in his supervisory capacity as the Chief of Public Safety, Ngo acted under color of law and knew, or reasonably should have known, that his subordinates were engaging in unlawful conduct. *See id.* ¶ 73. Defendants contend that these allegations still fail to state a claim against Ngo. The Court agrees.

The Ninth Circuit has found supervisorial liability under section 1983 where the

---

[2] As the first ground for dismissal, Defendants argue broadly that the entire FAC fails to state facts and should be dismissed under Rule 12(b)(6). *See* MTD at 3–4. Their proposed order, however, makes clear that the motion to dismiss only targets the first and fourth claims for relief. As such, the Court's order focuses on Solis' first claim against Ngo, and fourth claim against the City. The Court DENIES dismissal of the FAC as to the remaining defendants.

6

supervisor was "personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). "Supervisors can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (internal quotations omitted). "Therefore, the claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisorial liability.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208).

First, as explained in the Court's prior order, Ngo was not present during the events at issue in the complaint, so Solis cannot argue supervisorial liability based on Ngo's personal involvement. *See* Dkt. No. 28 at 10. Next, Solis does not adequately allege the required causal connection for supervisor liability under section 1983. *See* Dkt. No. 28 at 8–9. Solis' factual allegations are predominantly the same as those in his prior complaint. This time, however, Solis adds that: Ngo "led a 'Use of Force working group'" to address the current use of force policy and evaluate if changes [were] needed, *see* FAC ¶ 47; that "Ngo hired an outside consultant Hillard Heintze to review and investigate the City's internal affairs process and to hold officers to a higher standard of accountability," *see id*. ¶ 49; and that the "Sunnyvale Public Safety Officers Association (PSOA) performed a 'vote of no confidence' in [Ngo]" and alleged that Ngo failed to "'provide clear leadership, management, and policy decision.'" *See id*. ¶ 50.

7

None of these allegations illustrate the causal connection between Ngo's actions and the excessive force and unreasonable search and seizure alleged here. The PSOA's vote of no confidence still does not show that Ngo's own culpable action or inaction set in motion the defendant officers' alleged constitutional violations. Neither does Ngo's unsuccessful pursuit of implementing a working group and hiring a consultant to address ongoing improvements to the City's internal affairs processes. These allegations do not present a strong enough showing that Ngo directed or condoned the infliction of constitutional injury against Solis. In fact, it shows that Ngo took action to address generally prevalent issues across police departments — of which he knew or reasonably should have known would cause others to inflict constitutional injury — and did *not* knowingly refuse to terminate a series of acts by others. *See Starr*, 652 F.3d at 1207–08. The amended complaint still does not allege that Ngo knew of or was directly involved in the decisions leading to the excessive force, search, and seizure of Solis here.

Furthermore, the Court previously explained that Solis sufficiently alleged that the officers seized him and that Lockwood, Maxwell, Meadows, and Nguyen lacked probable cause. *See* Dkt. No. 28 at 9. The Court also found that Solis sufficiently alleged that a warrantless search occurred. *See id.* But Solis' makes conclusory allegations that Ngo promulgated unconstitutional policies and procedures which authorized the officers' conduct here, and directly caused the officers' unconstitutional conduct. *See* FAC ¶¶ 15, 53. These conclusory allegations still do not demonstrate that Ngo is liable for violating the Fourth Amendment in his supervisory capacity. *See* Dkt. No. 28 at 10.

It is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a *specific* policy" or "a *specific* event" instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original). The amended complaint here does not allege that Ngo was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. *See Keates*, 883 F.3d at 1243 (finding

8

that conclusory allegations that supervisor promulgated unconstitutional policies and procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability). Accordingly, the Court GRANTS Defendants' motion to dismiss Solis' claims against Defendant Ngo, WITHOUT LEAVE TO AMEND.

### B. *Monell* Liability

Solis' fourth claim asserts municipal liability against the City of Sunnyvale for violation of due process pursuant to 42 U.S.C. § 1983. *See* FAC ¶¶ 95–106. Solis argues the City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for (1) its custom of employing and retaining police officers who abuse their authority, and its policy, custom, and practice of using excessive force; and (2) its failure to properly train officers. *See* FAC ¶ 97. Solis no longer argues a ratification theory under *Monell*. *See* Opp'n at 19.

Under section 1983, a municipality is only liable when the alleged acts implement a municipal policy or custom in violation of constitutional rights. *See Monell*, 436 U.S. at 690. "Under *Monell*, municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). A plaintiff may also show that "an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the 'decision and the basis for it.'" *Fuller v. City of Oakland, Cal*, 47 F.3d 1522, 1534 (9th Cir. 1995). Again, Solis failed to state a claim for any constitutional violation by the City of Sunnyvale.

#### 1. Policy or Long-Standing Custom

The Court finds that Solis has insufficiently alleged a long-standing custom, policy, or practice to establish *Monell* liability. Generally, section 1983 liability may be imposed only when a municipal "policy" or "custom" is the "moving force" behind a violation of federally protected rights. *Monell*, 426 U.S. at 694.

Here, Solis describes the city's "official recognized custom, policy, and practice" as

1    unconstitutional without citing any policy statement, ordinance, regulation, or decision
2    officially adopted or promulgated by the City of Sunnyvale. FAC ¶ 97. Absent a formal
3    policy, a plaintiff must show a "longstanding practice or custom which constitutes the
4    standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d
5    911, 918 (9th Cir. 1996). Solis' allegations fail here for the second time. Solis contends
6    that the City has and maintains "an unconstitutional policy, custom, and practice of using
7    excessive force," and these "practices . . . were done with deliberate indifference to
8    individuals' safety and rights." FAC ¶ 97. He also alleges that they are "affirmatively
9    linked to and were a significantly influential force behind [Solis'] injuries." *Id.* ¶ 102.
10   Solis alleges that the City "made a conscious decision not to remedy the custom, policy, or
11   practice of excessive force," as evidenced by "various cases and evidence of citizen
12   complaints involving excessive force over almost two decades." Opp'n 11–12. Solis
13   contends that "these examples show a continued pattern and implicitly accepted custom,
14   practice, or policy of misconduct by [Defendants]." *Id.* at 11. Finally, Solis alleges that he
15   is informed and believes that "as a matter of official policy rooted in an entrenched posture
16   of deliberate indifference to the constitutional rights of persons who live, work or visit the
17   City of Sunnyvale, the Sunnyvale Public Safety Department has allowed persons to be
18   abused by its [officers.]" FAC ¶ 55. The Court finds that these allegations do not cure the
19   deficiencies in the prior complaint.
20   　　　To start, Solis presents the same factual allegations in his amended complaint, but
21   the same problems with Solis' prior allegations still exist. Despite the Court's prior
22   rejection of these authorities, Solis uses the existence of separate excessive force lawsuits
23   against the City to show that there is a long-standing practice or custom. However, these
24   allegations are inapplicable and too attenuated to the instant case. In his amended
25   complaint, Solis cites to *Wowak et al. v. City of Sunnyvale et al.*, No. 03-cv-00394, 2003
26   WL 23688301, in which the plaintiff, a police officer employed by the City, complained of
27   use of excessive force against employees during training, and against detainees. FAC ¶ 59.
28   *Wowak* is inapplicable here to show a practice or custom in the City of Sunnyvale because

10

the complained of conduct there occurred over fifteen years ago. *See Hunter v. Cty of Sacramento*, 652 F.3d 1225, 1227–28 (9th Cir. 2011) (in a case where the practice occurred between 2000–2005, and the complained of incident occurred in 2005, using evidence from a former employee regarding pattern of excessive force is sufficient to show practice or custom).

Although statements of a former employee are sufficient to show a custom or practice, the allegations about *Wowak* are not based on recent or factually similar prior lawsuits to adequately state a claim that the City engaged in a pattern of unconstitutional conduct. Solis also alleged that two more recent lawsuits showed the City's custom of excessive force, FAC ¶ 61, but neither of those lawsuits resulted in judgments against the City, let alone findings that the City maintained a custom of permitting excessive force. *See Bagley v. City of Sunnyvale*, No. 16-cv-02250-LHK, 2017 WL 344998 (N.D. Cal. Jan. 24, 2017) (plaintiff alleged that Sunnyvale had a policy of tolerating and promoting the continued use of excessive force, but the Court found that plaintiff failed to sufficiently allege that Sunnyvale's policies caused the constitutional violations at issue); *see also Purnell v. City of Sunnyvale Police Dep't*, No. 18-cv-02113-EJD, 2020 WL 3833286 (N.D. Cal. July 8, 2020), *appeal docketed*, No. 20-16447 (9th Cir. Jul. 29, 2020) (plaintiff's allegations that Sunnyvale used excessive force resulted in summary judgment finding in favor of Sunnyvale). Without facts alleging that these practices amount to a long-standing practice or custom, the mere existence of lawsuits against the City does not adequately show that the City adopted a custom of condoning excessive force.

This description of prior incidents is too vague to amount to a long-standing practice or custom. *See Clemmons v. City of Long Beach*, 379 F. App'x 639, 641 (9th Cir. 2010) (holding that improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy). Solis mentioned three prior incidents, *Wowak*, *Bagley*, and *Purnell*, in which different plaintiffs complained of excessive force. FAC ¶¶ 59–61. However, these three incidents

11

are not sufficient to establish a custom. *See Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988). Solis' misplaced reliance upon the same cases this Court rejected in its prior order does not cure the deficiencies in his complaint.

Notably, in his opposition memorandum Solis identifies new facts that are not contained in the amended complaint. *See* Opp'n at 13–16. Solis describes events recounted at an open forum with Sunnyvale City Council on June 25, 2020. *See* Opp'n at 13. According to Solis, "[s]everal residents discussed frightening experiences" and "called in to discuss concerns with excessive force and intimidation from the Sunnyvale Police." *Id*. Generally, the Court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). There are two exceptions to this rule: (1) when the complaint necessarily relies on the materials and their authenticity is not contested (incorporation by reference), or (2) where the court takes judicial notice of the matters of public record. *Lee*, 250 F.3d at 689 (citation omitted). The incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

The Court cannot consider allegations found only in Solis' opposition memorandum and not in the amended complaint. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss," citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (emphasis original)). Here, Solis' description of the June 2020 city council forum was not contained in or attached to the amended complaint, nor does the amended complaint necessarily rely on those materials. And no party has requested that the Court take judicial notice. Further, while the Court may take judicial notice of facts in a public record, factual questions exist as to the content

12

and authenticity of the statements made by citizens at the City Council public forum. Solis merely imparted his summary of those proceedings to the Court. As such, this militates against taking judicial notice. Thus, the Court need not consider those facts as part of a 12(b)(6) determination.

Even if the Court incorporates those additional facts contained in Solis' opposition, the Court's recommendation remains the same — Solis' argument still does not revive his practice or long-standing custom claims. Solis argues that Sunnyvale residents appeared at the June 2020 city council forum to complain of various isolated incidents where Sunnyvale police officers (including Defendant Lockwood) spoke aggressively to a group of young adults, *see* Opp'n at 14, conducted an "aggressive" and "inappropriate physical search" of a different individual, *see id*. at 15, and used excessive force against a protester, *see id*. at 15. Those isolated incidents are dissimilar to the incident at hand here, and do not establish a practice or custom. Additionally, these facts go against Solis' argument that the City is deliberately indifferent to the use of excessive force. According to Solis, those young adults lodged a complaint against Defendant Lockwood, and once reported to the City, the City sustained the complaint. *See* Opp'n at 14. Solis attempts to argue that there is an identified custom, but his argument shows that the City is *not* deliberately indifferent to reported problematic actions. Even still, the complained of action there was not excessive force like Solis complains of here.

Finally, Solis' vague allegations similarly fail to show that a long-standing practice exists based on a history of citizen complaints. Solis alleges that there are "twenty-four citizen complaints of excessive force against [the City] from 2007–Present," and that upon information and belief, "in every single one of these reported incidents . . . [the City] has deemed the complaints regarding the officers to be "Unfounded," "Not Sustained," "Exonerated," and as an "Inquiry Only." FAC ¶ 57. The Court cannot draw conclusions based on the fact that the City did not pursue twenty-four citizen complaints over the course of thirteen years. And as noted above, Solis even acknowledges that the City has pursued citizen complaints against its own officers. Accordingly, the Court disregards

13

Solis' arguments regarding policy or long-standing custom.

### 2. Inadequacy of Training

In order to establish a failure to train theory under *Monell*, a plaintiff must show that a particular training deficiency was so egregious that it "amount[ed] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). This type of indifference may be shown when, for example, "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" but still choose to retain that program. *Connick*, 563 U.S. 51, 61. "A *pattern* of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (emphasis added) (quoting *Bryan Cty*, 520 U.S. at 409).

Under this theory, Solis again alleges that the City's "failure to discipline and properly train any of the involved Officers is evidence of an official policy, entrenched culture, and posture of deliberate indifference toward protecting citizen's [sic] rights," and that his injuries are a "proximate result of the [City's] failure to properly supervise and train its Police Officers." FAC ¶ 57. By repeating these same allegations in the amended complaint, Solis still has not alleged enough facts to show that the City acted with deliberate indifference as to its officers' use of force during arrests, and he relies on merely conclusory statements. Solis generally alleges that the City's training of officers is inadequate because they train in "following through with excessive force, false arrest, and the unreasonable search and seizure." FAC ¶ 62. He also alleges that the failure to train is evident based on the Sunnyvale Public Safety Manual which states "[e]mployees shall obey the lawful orders given by higher ranking officers. An employee shall not refuse or fail to obey an order given by a higher ranking officer." *Id*. Because defendant Lockwood is Meadows' direct supervisor, Solis alleges that when Lockwood directed and ordered Meadows to search Solis' apartment without a valid warrant, he did so as a result of the

14

"approved and department-wide policy" and Meadows "followed the lead and direction of Defendant Lockwood" per their training. *Id.*

Solis concludes that this provision of the public safety manual trains officers to use excessive force, at their superior's request. *See id.* ¶ 62. He bases this allegation on Lockwood's position as Meadows' direct supervisor. *Id.* ¶ 62. Evidence of the failure to train a single employee is ordinarily insufficient to establish that the failure to train was a municipality's deliberate policy. *Connick*, 563 U.S. 51, 66; *see Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training was classified as negligence rather than deliberate indifference).

Solis' only new allegations state legal conclusions: that the City "failed to implement or require a use of force continuum when dealing with citizens. The lack of a policy or training of a use of force continuum contributed to, and was a causal connection to the excessive forced used on the Plaintiff," FAC ¶ 56; and "there was a failure to re-train, implement, address or ensure that all officers including the named Defendants received updated training regarding the use of force," *id.* ¶ 48. Furthermore, the amended complaint does not contain allegations concerning what training the City's officers receive now — only what type of training allegedly occurred over fifteen years ago in *Wowak et al. v. City of Sunnyvale et al.*, No. 03-cv-00394, 2003 WL 23688301. Solis does not provide anything new about the City's training policies to demonstrate that the City was deliberately indifferent. Accordingly, Solis' allegations of inadequate training are still insufficient to survive a motion to dismiss.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In general, valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (9162). The court may also consider whether pleadings have previously been amended. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

In this case, Solis has already been afforded the opportunity to amend his complaint. Solis parroted many of the same insufficient allegations contained in his original complaint and did not even include the full scope of factual allegations addressed in his opposition. The amended complaint fails to make further allegations to support a claim against Ngo and the City. And even if the materials outside the pleadings had been included in his amended complaint, they still would not have been sufficient to state a claim against the moving defendants. As such, the Court finds that further leave to amend would be futile. Solis' request for leave to amend is DENIED. *See* Opp'n at 10, 16.

## IV. Conclusion

The court orders the following:

- The motion to dismiss Solis' first claim under 42 U.S.C. § 1983 against Ngo is hereby GRANTED WITHOUT LEAVE TO AMEND;
- The motion to dismiss Solis' fourth claim against the City of Sunnyvale for *Monell* liability is hereby GRANTED WITHOUT LEAVE TO AMEND; and
- The motion to dismiss all claims against Lockwood, Meadows, Nguyen, and Maxwell is DENIED.

Defendants LOCKWOOD, MEADOWS, NGUYEN, and MAXWELL must answer the amended complaint by **January 4, 2021**.

**IT IS SO ORDERED.**

Dated: December 14, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge